## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ABLAISE LTD. | ) | |
|        Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:07-cv-01836 |
| | ) | |
| NAVTEQ CORP. | ) | Judge James Robertson |
| | ) | |
| FEDEX CORP. | ) | **ORAL HEARING REQUESTED** |
| | ) | |
| FEDEX CORPORATE SERVICES, INC. | ) | |
| | ) | |
| GENERAL MOTORS CORP. | ) | |
| | ) | |
| ALASKA AIR GROUP, INC. | ) | |
| | ) | |
| CIRCUIT CITY STORES, INC. | ) | |
| | ) | |
|        Defendants. | | |

**MEMORANDUM OF LAW IN OPPOSITION TO FEDEX CORPORATION'S MOTION TO DISMISS FEDEX CORPORATION OR, IN THE ALTERNATIVE, MOTION TO SEVER AND TRANSFER PURSUANT TO 28 U.S.C. § 1406.**

*"The focal point of our strategy is our award-winning Web site . . . ."*
Exh. A, FedEx Corporation Form 10-K (July 2007)

### INTRODUCTION

This Court has personal jurisdiction—both general and specific—over FedEx Corporation, the parent company named in Ablaise's Complaint ("FedEx.")  FedEx is the ultimate parent of the Federal Express operating companies and is registered to do business in the District of Columbia, maintains a registered agent in the District of Columbia, is active in the District of Columbia community, and uses a website that targets investors in the District of Columbia, and states in its 10K disclosure that it exercises decision-making control over the website that infringes Ablaise's patents in the District of Columbia.  FedEx, therefore, is subject

to suit in front of this Court. Transfer should be denied because duplicative proceedings in Tennessee would be wasteful, and FedEx is perfectly capable of defending itself in this District. Ablaise should not be deprived of its choice of forum, nor forced to take on enforcement of its patents in yet another forum. FedEx's motion should be denied in full.

## FACTUAL BACKGROUND

**I.    Ablaise Offered A License to Its Patents to FedEx.**

Ablaise is a licensing company located in the United Kingdom. Ablaise licenses rights of two fundamental patents that disclose methods that allow users to personalize the content and format of a website. In November 2006, Ablaise offered a license to FedEx because FedEx's website—fedex.com—infringes Ablaise's patents. (Exh. B.) Ablaise contacted FedEx's General Counsel, Christine P. Richards. (Id.) Ms. Richards, the same individual who submitted a declaration in support of FedEx's motion to dismiss, did not contend that FedEx does not own or operate FedEx.com, but instead forwarded it on to a FedEx assistant general counsel who in turn responded **on behalf of FedEx**. (Exh. C.) FedEx rejected Ablaise's license offer, in part, because it believed that this Court would not accept Ablaise's proposed claim constructions. (Id.)

Left with no alternative, Ablaise filed suit against, *inter alia*, FedEx on October 11, 2007. Almost two weeks later and almost one year after Ablaise offered FedEx a license, two subsidiaries of FedEx—FedEx Corporate Services Inc. ("FedEx Services") and Federal Express Corporation ("Federal Express") filed a declaratory judgment action in the Western District of Tennessee on October 23, 2007 asserting non-infringement and invalidity of the patents at issue before this Court. (Exh. D.) Two days after that, FedEx filed this motion to dismiss or transfer

the claims against FedEx.  Ablaise has since amended its complaint in this Court to included

FedEx Services as a named defendant.[1]

## II.    FedEx Has Established Ties to the District of Columbia.

FedEx is a publicly-traded company that has an annual revenue of over $35 billion and operates its businesses quite literally everywhere around the globe.  (Exh. E.)  FedEx is registered to do business in the District of Columbia and has a registered agent, C T Trust Corporation.  (Exh. F.)  FedEx also maintains an office in the District of Columbia, which it describes as a "small governmental affairs office."

FedEx systematically and deliberately directs its advertising, public relations, lobbying and other business activities at this District. For example FedEx, on behalf of itself and its operating subsidiaries, directs substantial public relations activity at this District. FedEx, for instance, just last year donated $1 million to contribute to a memorial for Dr. Martin Luther King Jr. within the District.  (Exh. G.)  FedEx is a supporter of a number of local, District of Columbia non-profit organizations,  (Exh. H) and FedEx purchased and owns the naming rights to the stadium for the Washington Redskins.  (Exh. A, at 102.)

FedEx also directs commercial activity and advertising into this District, among other ways, via its website, fedex.com.  FedEx  contends it in its motion  papers that  fedex.com  is not

---

[1] Ablaise has not named the subsidiary Federal Express Corporation because Federal Express has not identified what "arguably related website" to fedex.com Federal Express Corporation operates.  (Exh. D. at ¶ 14.)  Should Federal Express ever disclose this information, Ablaise will then move to include Federal Express in this suit if it determines that that website infringes.

FedEx's website.[2]  But this is contrary to a wealth of representations made by FedEx to the public, FedEx investors, and the United States Securities and Exchange Commission.  This Court need look no further than FedEx's most recent Form 10-K submitted to the SEC, a document signed under oath by the chief executives of FedEx Corporation, the defendant in this action.

> Our Web site is located at *fedex.com*. Detailed information about our services and our e-commerce tools and solutions can be found on our Web site. In addition, we make our Annual Reports on Form 10-K, Quarterly Reports on Form 10-Q, Current Reports on Form 8-K and all amendments to such reports available, free of charge, through our Web site, as soon as reasonably practicable after they are filed with or furnished to the SEC. These and other SEC filings are available through the Investor Relations page of our Web site, the address of which is *http://www.fedex.com/us/investorrelations* . . . . (Exh. A at 3).

FedEx further claims ownership and control over the website throughout its 10K: "Our Web site is located at fedex.com." (Exh. A at 3); "For example, our Web site, fedex.com . . . ." (Id. at 4); "The focal point of our strategy is our award-winning Web site . . . ." (Id. at 16); see also Exh. I (directing investors to its Web site, fedex.com).  Even if the FedEx.com website is managed by a wholly-owned subsidiary as FedEx represents, it is clear that FedEx claims ownership and control over the website at the highest corporate level.

    FedEx, moreover, maintains control and strategic guidance over its website.  FedEx admits in its public filings that it implements its technology, including its website, to maximize FedEx as a whole and not for individual subsidiaries.

> . . .Through our holding company [i.e. FedEx Corporation, the named defendant] and FedEx Corporate Services, Inc. ("FedEx Services") [i.e., the other named

---

[2] FedEx equivocates as to who owns and operates fedex.com.  At the beginning of its motion, FedEx maintains that FedEx Services owns and operates the website.  FedEx's Mem. of Law, at 3. Later, however, FedEx suggests that "[t]o the best of its knowledge, the accused website FedEx.com is owned and operated by FedEx Corporate Services, Inc. . . . ." Id. at 7.  And then, even later, FedEx suggests that perhaps no one makes, uses, or operates fedex.com.  "[FedEx Services and Federal Express] are the FedEx companies most likely, **if any**, to make use, and operate the accused FedEx.com and related websites." Id. at 11-12 (emphasis added).

defendant], we provide strategic direction to, and coordination of, the FedEx portfolio of companies. We intend to continue leveraging and extending the FedEx brand and providing our customers with convenient, seamless access to our entire portfolio of integrated business solutions.

\* \* \*

We believe that sales and marketing activities, as well as the information systems that support the extensive automation of our package delivery services, are functions that are best coordinated across operating companies. \* \* \*

We manage our business as a portfolio — in the long-term best interest of FedEx as a whole, not a particular operating company. As a result, we base decisions on capital investment, expansion of delivery, **information technology** and retail networks, and service additions or enhancements on achieving the highest overall long-term return on capital for our business as a whole. (Exh. A at 3-4 (emphasis added)).

FedEx further admits that its website—the act of accused infringement—is central to its

corporate-level strategy and management:

FedEx is a world leader in technology, and FedEx founder Federick W. Smith's vision that "the information about a package is as important as the delivery of the package itself" remains at the core of our comprehensive technology strategy.

. . . We strive to build technology solutions that will solve our customers' business problems with simplicity, convenience, speed and reliability. **The focal point of our strategy is our award-winning Web site**, together with our customer integrated solutions.

(Exh. A at 16 (emphasis added)).

FedEx also operates its website, including in this District, directly for its own commercial

benefit. One of the ways FedEx uses its website to attract investors, which includes District of

Columbia residents. Indeed, FedEx boasts that its website handles fifteen million unique visitors

a month. (Exh. E.) Of those fifteen million visitors, FedEx uses its websites to advertise and sell

shares of FedEx stock—the stock of the defendant named in this case. FedEx, for instance,

provides detailed analyses and information regarding it stock, including: stock quotes, price

history and charts, dividend split history, key facts, and analyst coverage. (Exh. J.) FedEx also

provides an interactive "investment calculator," which allows a user to see how much a given purchase of stock would have been worth depending on which date and price at a hypothetical purchase.  (Exh. K.)  Finally, FedEx allows a "direct purchase" of its stock from fedex.com. (Exh. L.)  This allows a user to purchase FedEx stock through fedex.com by directing users to FedEx's third-party transfer agent, which consummates the deal.  (Id.)  All of these efforts to sell shares of the named defendant are directed through the website to investors and potential investors wherever they may be, including in this District.

## ARGUMENT

FedEx's continuous and systematic contacts with the District of Columbia render it subject to general jurisdiction for suit in front of this Court.  Indeed, this Court has both general and specific jurisdiction over FedEx.  Even if this Court could transfer, the efficiencies weigh strongly in favor of denying FedEx's motion.

## I.    This Court Has Personal Jurisdiction Over FedEx.

Federal Circuit law governs personal jurisdiction in patent cases.  Silent Drive, Inc. v. Strong Indus., Inc., 326 F.3d 1194, 1201 (Fed. Cir. 2003).  While Ablaise bears the burden of establishing personal jurisdiction over FedEx, Ablaise need only make a *prima facie* showing that personal jurisdiction exists because the parties have not conducted jurisdictional discovery. Id.  Factual discrepancies, moreover, are construed in favor of Ablaise.  See id.; Arista Records, Inc. v. Sakfield Holding Co., 314 F. Supp. 2d 27, 30 (D.D.C. 2004).

To meet its burden, Ablaise must make a *prima facie* showing that the District of Columbia's long-arm statute and due process permits this Court to exercise personal jurisdiction over FedEx.  LSI Indus. Inc. v. Hubbell Lighting, Inc., 232 F.3d 1369, 1371 (Fed. Cir. 2000). The Federal Circuit defers to the District of Columbia's interpretation of its long-arm statute, but

Federal Circuit law controls whether the exercise of personal jurisdiction comports with due process. <u>3D Sys., Inc. v. Aarotech Labs., Inc.</u>, 160 F.3d 1373, 13777 (Fed. Cir. 1998). The District of Columbia's long-arm statutes permit two types of personal jurisdiction. District of Columbia Code § 13-334(a) permits general personal jurisdiction and § 13-423 permits specific personal jurisdiction. FedEx is subject to the jurisdiction this Court under both provisions.

**A.    This Court Has General Personal Jurisdiction Over FedEx.**

District of Columbia Code § 13-334(a) grants general personal jurisdiction over a foreign corporation if the corporation is "doing business" in the District of Columbia. <u>Ross v. Product Dev., Corp.</u>, 736 F. Supp. 285, 290 (D.D.C. 1989). A corporation is "doing business" if has "any continuing corporate presence in the forum state directed at advancing the corporation's objectives." <u>AMAF Int'l, Corp., v. Ralston Purina Co.</u>, 428 A.2d 849, 851 (D.C. 1981). This standard, moreover, is coextensive with constitutional due process. <u>Gorman v. Ameritrade Holding Corp.</u>, 293 F.3d 506, 510 (D.C. 2002).

Contrary to FedEx's suggestion, § 13-334(a) does **not** require FedEx to be "'doing business' in the District of Columbia **related to the commercial aspects that are accused of infringement**, in order for jurisdiction under D.C. Code § 13-334(a) to be found." FedEx Mem. of Law at 5 (emphasis added). Indeed, the District of Columbia Court of Appeals has squarely rejected this suggestion. <u>See, e.g.</u>, <u>AMAF Int'l</u>, 428 A.2d at 850 (explaining that § 13-334(a) "is in direct contrast to the 'transacting any business' provision of our long-arm statute, § 13-423(a)(1), under which jurisdiction is limited to claims arising from the particular transaction of business which forms the basis of jurisdiction."). The fundamental principle behind general personal jurisdiction, of course, is that FedEx will be subject to suit for any cause of action in the District of Columbia because it has availed itself of the privileges in the District of Columbia by

"doing business" here.  See, e.g., Ross, 736 F. Supp. at 290 ("13-334(a) confers jurisdiction over the defendant for all purposes, not merely for those claims arising out of the defendant's contacts with the District.").  FedEx's numerous contacts with the District of Columbia clearly qualify as "doing business."

First and foremost, FedEx is registered to do business in the District of Columbia and has been so since 1998.  FedEx, additionally, as required by law, maintains a registered agent in the District of Columbia.  And Ablaise served FedEx's registered agent, C T Corporation, in the District of Columbia.  Downey Decl. ¶ 2.  This alone is sufficient to subject FedEx to the jurisdiction of this Court.  See In re FTC Corporate Patterns Report Litigation, 432 F. Supp. 274, 286 (D.D.C. 1977) (denying defendant's motion to dismiss for lack of personal jurisdiction where defendant was "authorized to do business in the District, has appointed a registered agent, and received service of process through their registered agent.").

FedEx, additionally, maintains an office in the District of Columbia.  In its motion papers, FedEx distances itself from this office and maintains that it is "primarily" to track legislative affairs and governmental activities.  See Richards Decl. ¶ 3.  FedEx goes on to suggest that, based on Fandel v. Arabian Am. Oil Co., this governmental affairs office is insufficient to qualify as "doing business."  FedEx's Mem. of Law, at 5-6.  But Fandel construed the predecessor statute to 13-334 not to the furthest reach of constitutional limitation.  345 F.2d 87, 89 (D.C. Cir. 1965).  This Court has since interpreted D.C. Code § 13-334 to reach jurisdiction to the fullest extent constitutionally possible.  See, e.g., Arista Records, Inc. v. Sakfield Holding Co. S.L., 314 F. Supp. 2d 27, 31 (D.D.C. 2004).

FedEx's "governmental contacts" exception argument, moreover, is unavailing.[3] The governmental contacts exception applies when a party's contacts with the District of Columbia is based solely on contacts with a federal instrumentality, not a persistent lobbying and public relations presence accompanied by ownership of property and permanent employees in the District. See Environmental Research Int'l, Inc. v. Lockwood Greene Engineers, Inc., 355 A.2d 808, 813 (D.C. 1976) (en banc). "In fact, in other cases which have invoked the government contacts doctrine, the contacts in issue have always been direct contacts between the defendant and the 'federal instrumentality' and not ones between the defendant and his attorney or agent who later appears before a federal agency." Chase v. Pan-Pacific Broadcasting, Inc., 617 F. Supp. 1414, 1427 (D.D.C. 1985). Unless, therefore, a defendant is forced to appear in Washington for a unique governmental purpose, the governmental contacts exception does not apply. See id. (retaining Washington lawyer to appear before governmental agency was not required and, therefore, exception did not apply); Bechtel & Cole, v. Graceland Broadcasting, Inc., No. 92-7190, 1994 WL 85047, at *2 (D.C. Cir. May 25, 1994) (rejecting governmental exceptions where actions were "discretionary and not dependent on the 'unique character of the District as the seat of national government.'").

Here, FedEx does not even maintain that its office is solely for legislative tracking and governmental activities. See Richards Decl. ¶ 3 (qualifying as "primarily"). This description, moreover, is broader than just petitioning the government and government agencies. At the very least, jurisdictional discovery is warranted to delve into the activities, size, and nature of FedEx's District of Columbia office. See, e.g., GTE New Media Servs. Inc. v. Bellsouth Corp., 199 F.3d

---

[3] FedEx doesn't even raise the "governmental contacts" exception argument under § 13-334, but only does so under its § 13-423 argument. Regardless, it is unpersuasive and inapplicable to FedEx.

1343, 1351 (D.C. Cir. 2000) (permitting jurisdictional discovery if a party can supplement jurisdictional allegations through discovery).  Ablaise is confident that jurisdictional discovery will readily distinguish this case from <u>Fandel</u>.  Even without discovery, however, the breadth of FedEx's Governmental Affairs Office beyond the exception is transparent.  Just based on one press release, for instance, it is clear that FedEx's Governmental Affairs Office has a Corporate Vice President, Gina Adams, and a media contact, Kristin Krause.  (<u>See</u> <u>Exh. F</u>.)  Certainly an office with a media contact is not just interacting with a "federal instrumentality."

It is clear that FedEx holds itself out as a member of the District of Columbia community.  It actively targets and advertises to District of Columbia residents by owning the naming rights to the Washington Redskins' football field.  (<u>Exh. A</u> at 102.)  And, while commendable, FedEx, nonetheless, maintains that it has strong ties to the District of Columbia non-profit community.  (<u>See</u> <u>Exh. G</u>.)  As a member of the District of Columbia community, it cannot now maintain that it is outside this Court's jurisdiction.

Even further, FedEx's website satisfies a general personal jurisdiction analysis.  As explained in the factual background section, FedEx's current position that fedex.com is not its website is thoroughly belied by numerous representations to the SEC, investors, and the public.  (<u>See, e.g.</u>, <u>Exh. A</u> at 3, 4, and 16.)  Fedex.com is FedEx's website.  And through that website, FedEx gains revenue from District of Columbia residents.  It actively advertises and offers for sale shares of FedEx stock.  Ablaise contends that jurisdictional discovery will show that District of Columbia residents are among the 15 million unique visitors per month to fedex.com and that they do, in fact, utilize the interactive features on FedEx's website, such as the investment calculator and direct purchase of stock.

The shear interactivity of the website alone, in fact, subjects FedEx to general personal jurisdiction.  In Gorman v. Ameritrade Holding Corp., for instance, the United States Court of Appeals for the District of Columbia found that the defendant was subject to jurisdiction under § 13-334(a) where its website allowed District of Columbia residents "to engage in electronic transactions with the [defendant]."  293 F.3d 506, 512 (D.C. Cir. 2002).  "And by permitting such transactions to take place 24 hours a day, the site makes it possible for [defendant] to have contacts with the District of Columbia that are 'continuous and systematic' to a degree that traditional foreign corporations can never approach."  Id. at 513.  FedEx's website, which permits extensive interactivity—indeed FedEx boasts that its website is "widely recognized for its . . . customer-focused features"—subjects FedEx to jurisdiction in this District.  See, e.g., Blumenthal v. Drudge, 992 F. Supp. 44, 56 (D.D.C. 1998) ("The constant exchange of information and direct communication that District of Columbia Internet users are able to have with [Defendant's] host computer via his website is the epitome of web site interactivity.").

In short, FedEx's contacts make clear that it is "doing business" in the District of Columbia.  A number of its contacts alone would satisfy § 13-334(a) and the due process requirements.  And when all those contacts are looked at collectively, it is undeniable that FedEx has "purposely avail[ed] itself of the privilege of conducting activities within the forum state, and its continuing contacts with the District of Columbia must provide it with clear notice that it is subject to suit here."  See Gonzalez v. Int'l de Elevadores, 891 A.2d 227, 233 (D.C. 2006).

### B.     This Court Has Specific Personal Jurisdiction Over FedEx.

In addition to general personal jurisdiction, this Court also has specific personal jurisdiction over FedEx pursuant to D.C. Code §§ 13-423(a)(4).  This Court has jurisdiction over FedEx under § 13-423(a)(4) because FedEx caused a tortious injury in the District of Columbia

by an act outside the District of Columbia and, *inter alia*, FedEx engages in a persistent course of conduct in the District of Columbia. As an initial matter, FedEx has committed and continues to commit the tort of patent infringement, through the "use" of its infringing website.[4]  See 35 U.S.C. § 271(a).  This tort occurs in the District of Columbia because FedEx uses its website in the District of Columbia.  And even if the situs of the tort does not occur in the District of Columbia, tortious injury still occurs in the District of Columbia because District of Columbia residents use FedEx's infringing website in the District of Columbia.

FedEx also has a persistent course of conduct in the District of Columbia.  This analysis is called the "plus factor."  See, e.g., Blumenthal v. Drudge, 992 F. Supp. 44, 54 (D.D.C. 1998).  Importantly, the "plus factor" does not need to establish jurisdiction by itself, but rather just must show "some reasonable connection between the defendant and the forum."  Id.  As explained in section I.A., FedEx's has numerous and continuous contacts with the District of Columbia.  Because these contacts are sufficient to establish general jurisdiction, they are, *a fortiori*, sufficient to satisfy the "persistent conduct" standard.

## II.    Ablaise's Patent Infringement Case Against FedEx Cannot and Should Not Be Transferred to the Western District of Tennessee.

This Court should not transfer this case because the balance of factors this Court considers overwhelmingly favors maintaining jurisdiction over this case.  FedEx fails to meet its

---

[4] FedEx only moves to dismiss this action pursuant to 12(b)(2).  FedEx did not move to dismiss under 12(b)(6) or for summary judgment on the grounds that FedEx is not liable for the infringing website.  To the extent that FedEx contends in its motion, however, that it is not responsible for its website, Ablaise asserts that there is a factual dispute about this and that it will respond in an appropriate motion after discovery.  Ablaise's complaint, nonetheless, pleads a valid claim for patent infringement against FedEx.  Even assuming *arguendo* that FedEx Services owns and operates fedex.com, FedEx asserts and exercises corporate control over all of its technology, focusing on its website, for the collective best interest of FedEx and not individual subsidiaries.  (Exh. A at 3-4, 16.)  This is at least evidence of inducement and, Ablaise, therefore, has pled a valid claim for patent infringement.

burden under either § 1406(a) or § 1404(a) that the facts and circumstances of this case warrant a transfer of venue.

A.    **Venue Is Proper In This Court and Therefore § 1406(a) Is Inapplicable.**

Venue is proper in patent infringement cases anywhere the defendant resides.  28 U.S.C. § 1400(b).  A defendant resides everywhere it is subject to personal jurisdiction.  Id. § 1391(c). As demonstrated in section I, FedEx is subject to this Court's jurisdiction and, therefore, venue is proper here.  Accordingly, § 1406(a) is inapplicable because it only addresses situations where venue is improper.

B.    **FedEx Has Not and Cannot Meet Its Burden That Transfer Is Appropriate Under § 1404(a).**

FedEx cannot meet its burden to prove that this Court should exercise its discretion to transfer this case to the Western District of Tennessee.  See, e.g., Schmidt v. Am. Inst. of Physics, 322 F. Supp. 2d 28, 31 (D.D.C. 2004).  FedEx, in fact, does not even address the relevant factors that this Court considers to determine whether transfer is appropriate.  Instead, FedEx relies on conclusory and generic assertions regarding convenience of the parties and witnesses and interest of justice.  Ablaise will, nonetheless, address the relevant factors, showing how FedEx has failed to meet its burden and also that transfer is inappropriate.

This Court weighs the balance between private-interest factors and public-interest factors while determining whether the defendant has met its burden of proving transfer is appropriate. See, e.g., Akiachak Native Community v. Dept. of Interior, 502 F. Supp. 2d 64, 67 (D.D.C. 2007).  The balance of these factors overwhelming favors Ablaise's choice of forum—this Court.

1.    **Private-Interest Factors Favor This Court Maintaining  Jurisdiction.**

This Court looks at the following six private-interest factors: "1) the plaintiff's choice of forum, unless the balance of convenience is strongly in favor of the defendants, 2) the

defendant's choice of forum, 3) whether the claim arose elsewhere, 4) the convenience of the parties, 5) the convenience of the witnesses, and 6) the ease of access to sources of proof."  Id. These factors—individually and collectively—favor Ablaise.

First, this Court is Ablaise's choice of forum.  And as will be highlighted below, FedEx—an international transportation and logistics giant—is not incapable of  trying this case in front of this Court.

Second, FedEx's choice of forum is inappropriate.  FedEx is blatantly skirting the Federal Circuit's well-established first-to-file rule, whereby generally the forum of the first-filed case maintains jurisdiction.  See, e.g., Electronics for Imaging, Inc. v. Coyle, 394 F.3d 1341, 1347 (Fed. Cir. 2005).  Ablaise sued FedEx and now FedEx is playing corporate shell games in attempt to forum shop.  FedEx's games should not be countenanced.

Third, Ablaise's patent infringement claim did not arise elsewhere.  This claim arises everywhere by the inherent nature of the world wide web and FedEx's website.

Fourth and fifth, the convenience of both parties and witnesses favors this Court.  FedEx cannot in good faith argue that Ablaise witnesses can fly from London to Memphis as easily as they can fly from London to the District of Columbia.  This Court can take judicial notice of the fact that the District of Columbia has far more international flights than Memphis.  Furthermore, Ablaise witnesses will already be in front of this Court—as it maintains suit against six other defendants in the District of Columbia.  FedEx on the other hand is not as inconvenienced as its motion contends, which rests its argument on that its senior executives cannot be away from home for lengthy absences.  As an initial matter, FedEx's witnesses will not have to be away for "lengthy absences"—a few days of testimony at the most.  Additionally, surely FedEx's executives are used to working while on the road and are not merely potted plants in Memphis.

Sixth, ease of access to proof unquestionably weighs against transfer. As discussed, Ablaise will already have its proof in front of this Court by virtue of its actions currently pending. And if there is one company in this country—indeed, this world—that is best suited to transport documents and evidence to a forum outside its home town, it is FedEx who has resources to get anything to the "world on time."

### 2. The Public-Interest Factors Favor This Court Maintaining Jurisdiction.

The heart of the public-interest factors is judicial economy. And specifically, the interests of justice strongly disfavors the maintenance of two cases involving the same issues simultaneously pending in two district courts, which "leads to the wastefulness of time, energy, and money that § 1404(a) was designed to prevent." Me-Wuk Indian Community of the Wilton Rancheria v. Kempthorne, --- F. Supp. 2d ----, 2007 WL 3088581 at *7 (D.D.C. Oct. 24, 2007) (transferring to consolidate case with prior filed case in transferee district to avoid similar suits in separate districts). Here, this Court has already construed the terms of the asserted patents and presides over the same issues involving six separate defendants. To subject a different court to address the same issues would needlessly compound work and waste judicial resources.

The additional public-interest factors favor denying FedEx's transfer request. Specifically, this Court looks to: (1) the transferee's familiarity with the governing laws, (2) the relative congestion of the calendars of the potential transferee and transferor courts, and (3) the local interest in deciding local controversies. Akiachak Native Community v. Dept. of Interior, 502 F. Supp. 2d 64, 67 (D.D.C. 2007).

First, while nothing suggests that the Western District of Tennessee is unfamiliar with patent law, it is unfamiliar with the patents asserted in this case. As explained above, this Court is familiar, however, as it has made determinations as a matter of law, namely claim

construction, about the asserted patents.  This Court, furthermore, is intimately aware of the specific areas of law that this case will raise.

Second, both courts are unquestionably very busy.  But FedEx has come forward with no arguments that the Western District of Tennessee has an open calendar.  And this Court has proven that it handles cases before it in an efficient and quick manner.

In short, when the factors are addressed in full, it is clear that FedEx has failed to meet its burden showing that transfer is appropriate.  This Court is familiar with the patents and presides over the same issues of six other parties, both parties can conveniently try this case here, and nothing suggests that the Western District of Tennessee is a preferable forum.

## CONCLUSION

FedEx is subject to personal jurisdiction in the District of Columbia.  Ablaise, therefore, respectfully requests that this Court hear oral argument on this motion, deny FedEx's motion in full and allow Ablaise to proceed on the merits in front of this Court.

Dated:  November 5, 2007                          Respectfully submitted,

   s/ Jeffrey J. Downey
Jeffrey J. Downey, Esq. #427010
THE LAW OFFICES OF JEFFREY J.
DOWNEY
1225 I Street NW, Suite 600
Washington, DC  20005
Ph:  (202) 789-1110
Fx:  (202) 789-1116

Eric S. Jackson #446657
ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
2800 LaSalle Plaza
800 La Salle Avenue
Minneapolis, MN  55402-2015
Ph:  (612) 349-8500
Fx:  (612) 339-4181

Attorneys for Plaintiff ABLAISE LTD.

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| ABLAISE LTD. | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:07-cv-01836 |
| | ) | |
| NAVTEQ CORP. | ) | Judge James Robertson |
| | ) | |
| FEDEX CORP. | ) | **ORAL HEARING REQUESTED** |
| | ) | |
| FEDEX CORPORATE SERVICES INC. | ) | |
| | ) | |
| GENERAL MOTORS CORP. | ) | |
| | ) | |
| ALASKA AIR GROUP, INC. | ) | |
| | ) | |
| CIRCUIT CITY STORES, INC. | ) | |
| | ) | |
| Defendants. | | |

**DECLARATION OF JEFFREY J. DOWNEY**

I, Jeffrey J. Downey, declare:

1.    I am an attorney in The Law Offices of Jeffrey J. Downey and am admitted to practice before the United States District Court of the District of Columbia.  I represent Ablaise Ltd. in this matter.

2.    On October 26, 2007, I caused the summons and complaint for this case to be served on C T Corporation, located at 1015 15th Street N.W., Washington D.C. 20005, which is the registered agent in the District of Columbia for FedEx Corporation.

3.    Attached hereto as Exhibit A is a true and correct copy of excerpts from FedEx Corporation's Form 10-K, signed July 12, 2007.

4.    Attached hereto as Exhibit B is a true and correct copy of a letter from Thomas G. Scavone to Christine P. Richards, General Counsel for FedEx Corp., dated November 14, 2006.

5.      Attached hereto as Exhibit C is a true and correct copy of a letter from E. Chris Cherry, FedEx Corp. Senior Counsel, Legal Marketing and Intellectual Property, to Thomas G. Scavone, dated May 11, 2007.

6.      Attached hereto as Exhibit D is a true and correct copy of a complaint filed by FedEx Corporate Services, Inc. and Federal Express Corporation against Ablaise Ltd in the Western District of Tennessee, dated October 23, 2007.

7.      Attached hereto as Exhibit E is a true and correct copy of FedEx Corp.'s "Fact Sheet," available at http://news.van.fedex.com/files/factsheet_corporate.pdf.

8.      Attached hereto as Exhibit F is a true and correct copy of a search result for FedEx Corp. in the Registered Organization Search for foreign corporations in the District of Columbia, available at http://mblr.dc.gov/corp/lookup/status.asp?id=189537.

9.      Attached hereto as Exhibit G is a true and correct copy of a press release entitled "FedEx Corporation Donates $1 Million to Martin Luther King, Jr. National Memorial," dated September                    5,                    2006,                    available                    at http://www.mlkmemorial.org/site/apps/nl/content2.asp?c=hkIUL9MVJxE&b=1601407&ct=292 1615.

10.     Attached hereto as Exhibit H is a true and correct copy of a document entitled "FedEx              in              Washington,              D.C.,"              available              at http://news.van.fedex.com/files/FedEx%20in%20Washington.pdf.

11.     Attached hereto as Exhibit I is a true and correct copy of excerpts from the FedEx Corp.'s          Annual          Report          (2007),          available          at http://www.fedex.com/us/investorrelations/downloads/annualreport/2007annualreport.pdf.

12.     Attached hereto as Exhibit J is a true and correct copy of  a screen snapshot from FedEx Corp.'s "Stock Information," available at http://www.fedex.com/us/investorrelations/stockinfo/.

13.     Attached hereto as Exhibit K is a true and correct copy of a screen snapshot of FedEx's "Investment Calculator," available at http://ir.fedex.com/stock/calculator.cfm.

14.     Attached hereto as Exhibit L is a true and correct copy of a screen snapshot of FedEx's "Direct Purchase," available at http://www.fedex.com/us/investorrelations/stockinfo/directpurchase.html.

I declare under the penalty of perjury and the laws of the District of Columbia that the foregoing is true and correct.


Dated:  November 5, 2007                    _____s/ Jeffrey J. Downey_____

# EXHIBIT A

Table of Contents

# UNITED STATES SECURITIES AND EXCHANGE COMMISSION
## Washington, D.C. 20549

# Form 10-K

(Mark One)

☑    **ANNUAL REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**
For the fiscal year ended May 31, 2007.

or

☐    **TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**
For the transition period from        to        .

Commission file number 1-15829

# FEDEX CORPORATION
*(Exact Name of Registrant as Specified in its Charter)*

| | |
|---|---|
| **Delaware** | **62-1721435** |
| *(State or Other Jurisdiction of Incorporation or Organization)* | *(I.R.S. Employer Identification No.)* |
| **942 South Shady Grove Road, Memphis, Tennessee** | **38120** |
| *(Address of Principal Executive Offices)* | *(ZIP Code)* |

Registrant's telephone number, including area code:
**(901) 818-7500**

Securities registered pursuant to Section 12(b) of the Act:

| Title of Each Class | Name of Each Exchange on Which Registered |
|---|---|
| **Common Stock, par value $0.10 per share** | **New York Stock Exchange** |

Securities registered pursuant to Section 12(g) of the Act:
**None**

Indicate by check mark if the Registrant is a well-known seasoned issuer, as defined in Rule 405 of the Securities Act.  Yes ☑        No ☐

Indicate by check mark if the Registrant is not required to file reports pursuant to Rule 13 or Section 15(d) of the Exchange Act.  Yes ☐        No ☑

Indicate by check mark whether the Registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the Registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days.  Yes ☑        No ☐

Indicate by check mark if disclosure of delinquent filers pursuant to Item 405 of Regulation S-K (§ 229.405 of this chapter) is not contained herein, and will not be contained, to the best of Registrant's knowledge, in definitive proxy or information statements incorporated by reference in Part III of this Form 10-K or any amendment to this Form 10-K. ☑

Indicate by check mark whether the Registrant is a large accelerated filer, an accelerated filer, or a non-accelerated filer. See definition of "accelerated filer and large accelerated filer" in Rule 12b-2 of the Exchange Act. (Check one):

Large accelerated filer ☑        Accelerated filer ☐        Non-accelerated filer ☐

Indicate by check mark whether the Registrant is a shell company (as defined in Rule 12b-2 of the Exchange Act).  Yes ☐        No ☑

Table of Contents

# PART I

## ITEM 1. *BUSINESS*

### Overview

FedEx Corporation ("FedEx") provides a broad portfolio of transportation, e-commerce and business services through companies that compete collectively, operate independently and manage collaboratively, under the respected FedEx brand. These companies are included in four reportable business segments:

- *FedEx Express:*  Federal Express Corporation ("FedEx Express") is the world's largest express transportation company, offering time-certain delivery within one to three business days and serving markets that comprise more than 90% of the world's gross domestic product. The FedEx Express segment also includes FedEx Trade Networks, Inc., which provides international trade services, specializing in customs brokerage and global cargo distribution.

- *FedEx Ground:*  FedEx Ground Package System, Inc. ("FedEx Ground") is a leading provider of small-package ground delivery service. FedEx Ground provides low-cost service to every business address in the United States, Canada and Puerto Rico, as well as residential delivery to nearly 100% of U.S. residences through FedEx Home Delivery. The FedEx Ground segment also includes FedEx SmartPost, Inc., which specializes in the consolidation and delivery of high volumes of low-weight, less time-sensitive business-to-consumer packages using the U.S. Postal Service for final delivery to residences.

- *FedEx Freight:*  FedEx Freight Corporation is a leading U.S. provider of less-than-truckload ("LTL") freight services through its FedEx Freight business (regional next-day and second-day and interregional LTL freight services) and its FedEx National LTL business (long-haul LTL freight services). The FedEx Freight segment also includes FedEx Custom Critical, Inc., North America's largest time-specific, critical shipment carrier, and Caribbean Transportation Services, Inc., a leading provider of airfreight forwarding services between the United States and Puerto Rico.

- *FedEx Kinko's:*  FedEx Kinko's Office and Print Services, Inc. ("FedEx Kinko's") is a leading provider of document solutions and business services. FedEx Kinko's global network of digitally-connected locations offers access to technology for copying and printing, professional finishing, document creation, Internet access, computer rentals, videoconferencing, signs and graphics, direct mail, Web-based printing and the full range of FedEx day-definite ground shipping and time-definite global express shipping services, and a variety of other retail services and products, including office supplies.

For financial information concerning our reportable business segments, refer to the accompanying financial section, which includes management's discussion and analysis of results of operations and financial condition and our consolidated financial statements.

Our Web site is located at *fedex.com* . Detailed information about our services and our e-commerce tools and solutions can be found on our Web site. In addition, we make our Annual Reports on Form 10-K, Quarterly Reports on Form 10-Q, Current Reports on Form 8-K and all amendments to such reports available, free of charge, through our Web site, as soon as reasonably practicable after they are filed with or furnished to the SEC. These and other SEC filings are available through the Investor Relations page of our Web site, the address of which is *http://www.fedex.com/us/investorrelations* . The information on our Web site, however, is not incorporated by reference in, and does not form part of, this Annual Report on Form 10-K.

Except as otherwise specified, any reference to a year indicates our fiscal year ended May 31 of the year referenced.

### Strategy

FedEx was incorporated in Delaware on October 2, 1997 to serve as the parent holding company of FedEx Express and each of our other operating companies. Through our holding company and FedEx

Corporate Services, Inc. ("FedEx Services"), we provide strategic direction to, and coordination of, the
FedEx portfolio

3

Table of Contents

of companies. We intend to continue leveraging and extending the FedEx brand and providing our customers with convenient, seamless access to our entire portfolio of integrated business solutions.

We are pursuing a number of initiatives to continue to enhance the FedEx customer experience. For instance, we are expanding our transportation and retail networks (as described below) to accommodate future volume growth and increase customer convenience. In addition, we are broadening and more effectively bundling our portfolio of services in response to the needs and desires of our customers, such as through our recent acquisitions in the long-haul LTL freight and international domestic express transportation markets (as described below) and our new and improved service offerings — for example, FedEx Kinko's Print Online (see "FedEx Kinko's Segment" below).

We believe that sales and marketing activities, as well as the information systems that support the extensive automation of our package delivery services, are functions that are best coordinated across operating companies. Through the use of advanced information systems that connect the FedEx companies, we make it convenient for customers to use the full range of FedEx services. We believe that seamless information integration is critical to obtain business synergies from multiple operating units. For example, our Web site, *fedex.com* , provides a single point of contact for our customers to access FedEx Express, FedEx Ground and FedEx Freight shipment tracking, customer service and invoicing information and FedEx Kinko's office and print services. Similarly, by making one call to the new FedEx Expedited Freight Services, our customers can quickly and easily evaluate surface and air freight shipping options available from FedEx Express, FedEx Freight and FedEx Custom Critical in order to select the best service meeting their needs. Through this one point of contact, customers can select from a broad range of freight services, based on their pickup and delivery requirements, time sensitivity and the characteristics of the products being shipped.

We manage our business as a portfolio — in the long-term best interest of FedEx as a whole, not a particular operating company. As a result, we base decisions on capital investment, expansion of delivery, information technology and retail networks, and service additions or enhancements on achieving the highest overall long-term return on capital for our business as a whole. For each FedEx company, we focus on making appropriate investments in the technology and assets necessary to optimize our earnings performance and cash flow. As an example of our commitment to managing collaboratively, most of our management incentive compensation programs are tied to the performance of FedEx as a whole.

While we have increased our emphasis on competing collectively and managing collaboratively, we continue to believe that operating independent networks, each focused on its own respective markets, results in optimal service quality, reliability and profitability from each business unit. Each FedEx company focuses exclusively on the market sectors in which it has the most expertise. Each company's operations, cost structure and culture are designed to serve the unique customer needs of a particular market segment.

Our "compete collectively, operate independently, manage collaboratively" strategy also provides flexibility in sizing our various operating companies to align with varying macro-economic conditions and customer demand for the market segments in which they operate. For example:

• To accommodate international growth at FedEx Express, we are adding flights, purchasing aircraft, increasing capacity and improving services to and from Europe and Asia based on the growth prospects of these regions.

• We are expanding network capacity at our growing FedEx Ground and FedEx Freight companies. For instance, we expect to increase FedEx Ground's daily package pick-up capacity to approximately five million packages by 2012.

• We are expanding the FedEx Kinko's retail network, which will further increase customer access to FedEx shipping services and offer growth opportunities in e-commerce and other business services.

We believe the following four trends continue to drive world commerce and shape the global marketplace:

• *Globalization:*  As the world's economy becomes more fully integrated, and as barriers to trade continue to decrease, companies are sourcing and selling globally. With customers in more than 220 countries and

Case 1:07-cv-01836-JR     Document 8-3     Filed 11/05/2007     Page 6 of 12

4

Table of Contents

functions, enabling us to more effectively sell the entire portfolio of express and ground services and to help ensure a consistent and outstanding experience for our customers.

FedEx Services provides our customers with a high level of service quality, as evidenced by our ISO 9001 certification for our global express and ground operations. ISO 9001 registration is required by thousands of customers around the world. FedEx's global certification, encompassing the processes of FedEx Express, FedEx Ground and FedEx Services, enhances our single-point-of-access strategy and solidifies our reputation as the quality leader in the transportation industry. ISO 9001 is currently the most rigorous international standard for Quality Management and Assurance. ISO standards were developed by the International Organization for Standardization in Geneva, Switzerland to promote and facilitate international trade. More than 150 countries, including European Union members, the United States and Japan, recognize ISO standards.

T. Michael Glenn is the President and Chief Executive Officer of FedEx Services, which is based in Memphis, Tennessee. As of May 31, 2007, FedEx Services had approximately 15,000 employees.

### Technology

FedEx is a world leader in technology, and FedEx founder Frederick W. Smith's vision that "the information about a package is as important as the delivery of the package itself" remains at the core of our comprehensive technology strategy.

Our technology strategy is driven by our desire for customer satisfaction. We strive to build technology solutions that will solve our customers' business problems with simplicity, convenience, speed and reliability. The focal point of our strategy is our award-winning Web site, together with our customer integrated solutions.

The *fedex.com* Web site was launched over ten years ago, and during that time, customers have shipped and tracked billions of packages at *fedex.com* . The *fedex.com* Web site is widely recognized for its speed, ease of use and customer-focused features. At *fedex.com* , our customers ship packages, determine international documentation requirements, track package status, pay invoices and access FedEx Kinko's office and printing services. Our FedEx Insight application provides customers with visibility and package status of their inbound and outbound express, ground and freight shipments. Our FedEx Global Trade Manager resource enables customers to more easily navigate the complexities of international commerce by helping them identify the documents they need in order to ship to and from specific countries. FedEx Global Trade Manager also offers a currency converter, profiles of regulatory information by country, a customs regulation guide and, through its "Estimate Duties and Taxes" features, customers can estimate applicable governmental charges, duties and fees. FedEx Billing Online provides customers real-time access to their accounts, invoices and paid shipment details.

We have extended the reach of the *fedex.com* Web site to be accessible from most wireless devices, making it faster and easier for U.S. and Canadian customers to access real-time package status tracking information, rates and drop-off location data for FedEx Express and FedEx Ground shipments. Our wireless service is available through Web-enabled devices, such as mobile telephones, personal digital assistants and Research In Motion (RIM) devices (such as the BlackBerry). FedEx also uses wireless data collection devices to scan bar codes on shipments. Our data collection device, the FedEx PowerPad, uses Bluetooth wireless technology to give our couriers wireless access to the FedEx network, thereby enhancing and accelerating the package information available to our customers.

We design our e-commerce tools and solutions to be easily integrated into our customers' applications, as well as into third-party software being developed by leading e-procurement, systems integration and enterprise resource planning companies. Our FedEx Ship Manager suite of solutions offers a wide range of options to help our customers manage their shipping and associated processes.

### Marketing

The FedEx brand name is a symbol for high-quality service, reliability and speed. FedEx is one of the most widely recognized brands in the world. Special emphasis is placed on promoting and protecting the FedEx

Case 1:07-cv-01836-JR     Document 8-3     Filed 11/05/2007     Page 8 of 12

16

Table of Contents

### SIGNATURES

Pursuant to the requirements of Section 13 or 15(d) of the Securities Exchange Act of 1934, as amended, the Registrant has duly caused this Report to be signed on its behalf by the undersigned, thereunto duly authorized.

FEDEX CORPORATION

Dated: July 12, 2007

By: /s/  FREDERICK W. SMITH
    Frederick W. Smith
    Chairman, President and
    Chief Executive Officer

Pursuant to the requirements of the Securities Exchange Act of 1934, as amended, this Report has been signed below by the following persons on behalf of the Registrant in the capacities and on the dates indicated.

| Signature | Capacity | Date |
|---|---|---|
| /s/  FREDERICK W. SMITH<br>Frederick W. Smith | Chairman, President and<br>Chief Executive Officer<br>and Director<br>*(Principal Executive Officer)* | July 12, 2007 |
| /s/  ALAN B. GRAF, JR.<br>Alan B. Graf, Jr. | Executive Vice President and<br>Chief Financial Officer<br>*(Principal Financial Officer)* | July 12, 2007 |
| /s/  JOHN L. MERINO<br>John L. Merino | Corporate Vice President<br>and Principal Accounting Officer<br>*(Principal Accounting Officer)* | July 12, 2007 |
| /s/  JAMES L. BARKSDALE*<br>James L. Barksdale | Director | July 12, 2007 |
| /s/  AUGUST A. BUSCH IV*<br>August A. Busch IV | Director | July 12, 2007 |
| /s/  JOHN A. EDWARDSON*<br>John A. Edwardson | Director | July 12, 2007 |
| /s/  JUDITH L. ESTRIN*<br>Judith L. Estrin | Director | July 12, 2007 |
| /s/  J. KENNETH GLASS*<br>J. Kenneth Glass | Director | July 12, 2007 |
| /s/  PHILIP GREER*<br>Philip Greer | Director | July 12, 2007 |

Case 1:07-cv-01836-JR      Document 8-3      Filed 11/05/2007      Page 10 of 12

30

Table of Contents

| Signature | Capacity | Date |
|---|---|---|
| /s/  J. R. HYDE, III* | Director | July 12, 2007 |
| J. R. Hyde, III | | |
| /s/  SHIRLEY ANN JACKSON* | Director | July 12, 2007 |
| Shirley Ann Jackson | | |
| /s/  STEVEN R. LORANGER* | Director | July 12, 2007 |
| Steven R. Loranger | | |
| /s/  CHARLES T. MANATT* | Director | July 12, 2007 |
| Charles T. Manatt | | |
| /s/  JOSHUA I. SMITH* | Director | July 12, 2007 |
| Joshua I. Smith | | |
| /s/  PAUL S. WALSH* | Director | July 12, 2007 |
| Paul S. Walsh | | |
| /s/  PETER S. WILLMOTT* | Director | July 12, 2007 |
| Peter S. Willmott | | |
| *By:  /s/  JOHN L. MERINO | | July 12, 2007 |
| John L. Merino | | |
|     Attorney-in-Fact | | |

31

Table of Contents

**FEDEX CORPORATION**

**NOTES TO CONSOLIDATED FINANCIAL STATEMENTS — (Continued)**

Court for a review of the appellate court decision, and that petition was denied. The rest of the appeal is pending.

Adverse determinations in these matters could, among other things, entitle certain of our contractors to the reimbursement of certain expenses and to the benefit of wage-and-hour laws and result in employment and withholding tax liability for FedEx Ground. On August 10, 2005, the Judicial Panel on Multi-District Litigation granted our motion to transfer and consolidate the majority of the class-action lawsuits for administration of the pre-trial proceedings by a single federal court — the U.S. District Court for the Northern District of Indiana. We strongly believe that FedEx Ground's owner-operators are properly classified as independent contractors and that we will prevail in these proceedings. Given the nature and preliminary status of these claims, we cannot yet determine the amount or a reasonable range of potential loss in these matters, if any.

*Race Discrimination.* During the fourth quarter of 2007, we settled *Satchell v. FedEx Express* , a class action lawsuit in California that alleged discrimination by FedEx Express in the Western region of the United States against certain current and former minority employees in pay and promotion. The settlement will require a payment of approximately $55 million by FedEx Express, which is covered by insurance. The court has granted preliminary approval of the settlement, and a hearing is scheduled for August 2007 for the court to consider final approval of the settlement.

*Other.* FedEx and its subsidiaries are subject to other legal proceedings that arise in the ordinary course of their business. In the opinion of management, the aggregate liability, if any, with respect to these other actions will not materially adversely affect our financial position, results of operations or cash flows.

**NOTE 18: RELATED PARTY TRANSACTIONS**

Two of our sponsorships of professional sports venues involve related parties. Our Chairman, President and Chief Executive Officer, Frederick W. Smith, currently holds an approximate 10% ownership interest in the National Football League Washington Redskins professional football team ("Redskins") and is a member of its board of directors. FedEx has a multi-year naming rights agreement with the Redskins granting us certain marketing rights, including the right to name the Redskins' stadium "FedExField."

A member of our Board of Directors, J.R. Hyde, III, and his wife together own approximately 13% of HOOPS, L.P. ("HOOPS"), the owner of the NBA Memphis Grizzlies professional basketball team. FedEx has a naming rights agreement with HOOPS granting us certain marketing rights, including the right to name the Grizzlies' arena "FedEx Forum." Pursuant to a separate 25-year agreement with HOOPS, the City of Memphis and Shelby County, FedEx has agreed to pay $2.5 million a year for the balance of the term if HOOPS terminates its lease for the arena after 17 years.

102

# EXHIBIT B

NIRO, SCAVONE, HALLER & NIRO

RAYMOND P. NIRO
THOMAS G. SCAVONE
TIMOTHY J. HALLER
WILLIAM L. NIRO
JOSEPH N. HOSTENY, III
ROBERT A. VITALE, JR.
JOHN C. JANKA
PAUL K. VICKREY
DEAN D. NIRO
RAYMOND P. NIRO, JR.
PATRICK F. SOLON
ARTHUR A. GASEY
CHRISTOPHER J. LEE
DAVID J. SHEIKH
VASILIOS D. DOSSAS

181 WEST MADISON STREET-SUITE 4600

CHICAGO, ILLINOIS 60602-4515
———

TELEPHONE (312) 236-0733

FACSIMILE (312) 236-3137

November 14, 2006

ROBERT P. GREENSPOON
SALLY WIGGINS
RICHARD B. MEGLEY, JR.
MATTHEW G. McANDREWS
PAUL C. GIBBONS
WILLIAM W. FLACHSBART
BRADY J. FULTON
GREGORY P. CASMER
DOUGLAS M. HALL
DINA M. HAYES
FREDERICK C. LANEY
DAVID J. MAHALEK
KARA L. SZPONDOWSKI
ROBERT A. CONLEY
ERIC J. MERSMANN

**FEDERAL EXPRESS**

Christine P. Richards
Executive Vice President
General Counsel and Secretary
FedEx Corporation
942 South Shady Grove Road
Memphis, Tennessee 38120

Re:    *Ablaise Ltd. – United States Patent No. 6,961,737*

Dear Ms. Richards:

We represent Ablaise Ltd., a U.K. Corporation, the owner of United States Patent No. 6961,737 ("the '737 patent") and other related United States and foreign patents and patent applications.

The '737 patent is directed, generally, to technology implemented on the internet. It is more specifically directed to systems and methods for the dynamic generation of varying formatted web pages, using preferences to personalize the viewed pages. The invention was developed in the early to mid 1990s and represents a pioneering innovation in internet technology. The inventors, who are now principals in Ablaise Ltd., then went on to commercialize and sell the technology in Europe.

In 2005, Ablaise initiated a licensing program in the United States and has now granted licenses to a number of major United States companies under one or more of its patents. Current licensees include: Citigroup Corporation, Dell, Inc., CDW Corporation, E*TRADE Financial Corporation, J & R Electronics, Inc., Wegmans Food Markets, Inc., INVESTools, Inc., Getty Images, Inc., Salesforce.com and Shopping.com, just to name a few. We are writing now to extend a license offer to FedEx Corporation ("FedEx") as well.

Christine P. Richards
November 14, 2006
Page 2 of 2

After careful study, Ablaise has determined that the FedEx.com website practices the inventions claimed in the '737 patent.  Our analysis indicates that FedEx.com's infringement is not merely incidental; rather, the website implements core features that rely substantially on the '737 patent technology.

To facilitate your review of this matter, we are enclosing a hardcopy of the '737 patent along with a multimedia package including the '737 patent and its file history, an infringement analysis of representative claim 1 of the '737 patent, and background information on Ablaise and its inventors.  Ablaise is confident that upon review of the FedEx.com website in light of the '737 patent, as well as the enclosed materials, FedEx.com will arrive at a similar conclusion.

Ablaise is prepared to offer a license under the '737 patent on terms which are, by any measure, fair and reasonable. The value of the license depends, in part, on the extent to which FedEx.com makes use of the patented technology in its website, the user volume which the site experiences, and the revenues generated from or attributable to the use of the site.  Other factors may also be relevant.  For example, non monetary benefits derived from operation of the site may be important to a proper valuation of the license.  We recognize, however, that much of this information may be highly sensitive and that FedEx.com may choose not to share it with us.  It may also prove difficult and costly to determine, verify, audit and report such information on a continuing basis.  For these reasons, Ablaise is willing, in some circumstances, to forego a continuing royalty calculated as a percentage of website derived revenue and to accept, instead, an annual or one time lump sum payment. To that end, we are also enclosing copies of Ablaise's standard lump sum and continuing royalty license agreements.

As you will see, Ablaise has devoted substantial time and effort in the preparation of these materials for your review and consideration. It is a matter of utmost importance to Ablaise, and we ask that you respond at your very earliest convenience, but in any event no later than December 4, 2006.

Sincerely yours,

Thomas G. Scavone

Enclosures
cc:    Mark Bernstein
       Ablaise

# EXHIBIT C

Legal Marketing & Intellectual Property     Telephone 901.434.8600
3620 Hacks Cross Road                     Fax 901.434.9256
Building B, 3rd Floor
Memphis, TN 38125



Corporation

**VIA FEDEX ENVELOPE**

May 11, 2007

Thomas G. Scavone, Esq.
Niro, Scavone, Haller & Niro
181 West Madison Street – Suite 4600
Chicago, IL 60602-4515

**Re:** Ablaise Ltd. – United States Patent No. 6,961,737

Dear Mr. Scavone:

I write in response to your voice mail of May 8, 2007, regarding Ablaise's offer to license U.S. Patent No. 6,961,737 and your prior correspondence. Based on our analysis, we conclude that FedEx is not interested in licensing the '737 patent at this time.

In reaching this conclusion, we considered the Ablaise Patent Information DVD that you sent with your letter of November 14, 2006, as well as the claim construction positions Ablaise took in its Responsive Markman Brief filed on April 4, 2007, in the pending litigation with Dow Jones in the District Court for the District of Columbia.

Based on our analysis, it is our opinion that the www.fedex.com website does not perform necessary elements of the independent claims of the '737 patent as we understand the claims. Furthermore, we believe that the claims of the '737 patent are invalid in light of prior art references of which we are aware, including, for example, the ones mentioned by Dow Jones in its Markman Brief and supporting declarations.

We understand that Ablaise has espoused in its Responsive Markman Brief a more narrow interpretation of its claims that it believes, if adopted by the Court, will overcome the prior art cited by Dow Jones. It is our opinion that Ablaise's proffered construction is not supported by the specification or the prosecution history and will be rejected by the Court.

We assure you that it is the policy of FedEx Corporation to respect the intellectual property rights of others and to seek amicable resolution to any claims of patent infringement. However, for the reasons mentioned above, we see no reason to discuss license terms at this time.

Sincerely,
**FEDEX CORPORATION**

E. Chris Cherry
Senior Counsel
Legal Marketing and Intellectual Property

645185

# EXHIBIT D

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| FEDEX CORPORATE SERVICES, INC. and FEDERAL EXPRESS CORPORATION, | |
| Plaintiffs, | |
| v. | CASE NO. _____ |
| ABLAISE, LTD. and GENERAL INVENTIONS INSTITUTE A, INC., | **DEMAND FOR JURY TRIAL** |
| Defendants. | |

## COMPLAINT FOR DECLARATORY JUDGMENT OF NONINFRINGEMENT, INVALIDITY, AND UNENFORCEABILITY

FedEx Corporate Services, Inc. and Federal Express Corporation (collectively "The FedEx Companies" or "Plaintiffs") hereby bring this action for declaratory judgment against Ablaise Ltd. and General Inventions Institute A, Inc. (collectively "Ablaise") as follows.

## **Parties**

1.      FedEx Corporate Services, Inc. is a corporation organized under the laws of the State of Delaware and has a principal place of business at 3610 Hacks Cross Road, Memphis, Tennessee 38125.

2.      Federal Express Corporation is a corporation organized under the laws of the State of Delaware and has a principal place of business at 3610 Hacks Cross Road, Memphis, Tennessee 38125.

3.      Defendant Ablaise, Ltd. is, on information and belief, a British corporation

with its principal place of business at 40 Queen Anne Street, London, W1G9EL, United

Kingdom.

4.      Defendant General Inventions Institute A, Inc. is, on information and

belief, a British Virgin Islands corporation with a principal place of business at Craigmuir

Chambers, P.O. Box 71, Road Town, Tortola, British Virgin Islands.

## **Jurisdiction**

5.      The FedEx Companies bring this civil action under the Patent Laws, Title

35 of the United States Code, and under 28 U.S.C. §§ 2201 and 2202 to obtain

declaratory judgments of non-infringement, invalidity, and unenforceability of U.S.

Patent No. 6,961,737 ("the '737 patent"), titled "Serving Signals."  A copy of the '737

patent is attached as Exhibit A.

6.      The '737 patent is assigned on its face to Ablaise Ltd.

7.      In Complaints filed in other jurisdictions, Ablaise Ltd and General

Inventions Institute A, Inc. have stated that they collectively own the '737 patent.

8.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331

and 1338.

9.      Venue is proper in this judicial district under 28 U.S.C. § 1391(d).

10.     In addition, jurisdiction is proper in this district under Fed. R. Civ. P.

4(k)(2).  The cause of action arises under federal law.  Ablaise and GIIA are not subject

to the jurisdiction of the courts of general jurisdiction of any particular state.

Additionally, Ablaise and GIIA have at least minimum contacts with the United States

because, among other things, they have obtained patent rights in the United States in the

form of the '737 patent, announced that they have granted licenses to a number of major
United States Operating Companies under one or more patents and are presumably
deriving income therefrom, entered into negotiations with United States companies to
license the '737 patent and related patents, and initiated litigation against United States
companies in various United States District Courts.

<u>**Facts Giving Rise to This Action**</u>

11.     On October 11, 2007, Ablaise Ltd. filed a Complaint for Patent
Infringement against FedEx Corporation and four other parties in the United States
District Court for the District of Columbia (hereinafter "DC Complaint").  This DC suit is
entitled Ablaise Ltd. v. Navteq Corp., Civil Action No. 1:07-CV-01836.

12.     In the DC Complaint, Ablaise alleged that FedEx Corporation has
infringed one or more claims of the '737 by "making, using, and operating its FedEx.com
and related websites."

13.     The accused website, www.fedex.com, is actually owned and operated by
FedEx Corporate Services, Inc., a wholly different corporate entity from FedEx
Corporation.  FedEx Corporate Services, Inc. has its operations within this district.

14.     In addition, Federal Express Corporation operates a website arguably
related to the FedEx.com website.  Federal Express Corporation is also a wholly different
corporate entity from FedEx Corporation with operations within this district.

15.     The FedEx Companies continue to operate websites within this judicial
district that Ablaise has accused of infringing the '737 patent.

## COUNT I

**Declaratory Judgments of Non-Infringement of the '737 Patent**

16.     The FedEx Companies restate and re-allege the allegations set forth in paragraphs 1 through 15 and incorporate them by reference.

17.     The FedEx Companies do not infringe any valid claim of the '737 patent.

18.     Based on Ablaise's pending DC Complaint, the FedEx Companies have a cloud over their businesses with respect to the '737 patent, and fear that, at some point in the near future, Ablaise will allege that the FedEx Companies are infringing the '737 patent by making, using, and operating www.fedex.com and related websites.

19.     These facts indicate that a substantial controversy between FedEx Companies and Ablaise, parties having adverse legal interest, exists and that such controversy is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.  Therefore, the FedEx Companies are entitled to a judgment declaring that they have not infringed, and do not infringe, any valid and enforceable claim of the '737 patent.

## COUNT II

**Declaratory Judgments of Invalidity of the '737 Patent**

20.     The FedEx Companies restate and re-allege the allegations set forth in paragraphs 1 through 19 and incorporate them by reference.

21.     The '737 patent is invalid under one or more sections of the United States Patent Act, 35 U.S.C. § 1 et seq., including 35 U.S.C. § 101, 102, 103 and/or 112.

22.     Based on Ablaise's pending DC Complaint, the FedEx Companies have a cloud over their businesses with respect to the '737 patent, and fear that, at some point in

the near future, Ablaise will allege that the FedEx Companies are infringing the '737

patent by making, using, and operating www.fedex.com and related websites.

23.     These facts indicate that a substantial controversy between the FedEx

Companies and Ablaise, parties having adverse legal interest, exists and that such

controversy is of sufficient immediacy and reality to warrant the issuance of a declaratory

judgment.  Therefore, the FedEx Companies are entitled to a judgment declaring that the

'737 patent is invalid.

<u>**COUNT III**</u>

**Declaratory Judgment of Unenforceability of the '737 Patent**

24.     The FedEx Companies restate and re-allege the allegations set forth in

paragraphs 1 through 23 and incorporate them by reference.

25.     Ablaise and/or the named inventors unreasonably and inexcusably delayed

prosecution of several claims, including at least claim 1 of the '737 patent.  Numerous

claims, including claim 1 of the '737 patent, were presented to the USPTO years after the

filing of the original application from which the '737 patent claims priority, including

many claims presented as late as February 25, 2005, which is almost nine years after the

May 15, 1996, filing of U.S. Patent Application No. 08/647,769.  On information and

belief, Ablaise and/or named inventors submitted these claims after an unreasonable and

inexcusable delay in an attempt to wrongly acquire for themselves the publicly-known

developments of others – developments that were made without any knowledge or

reliance on the alleged invention disclosed in U.S. Patent Application No. 08/647,769.

26.     The claims of the '737 patent are unenforceable pursuant to the doctrine of

prosecution laches.  The unreasonable and inexcusable delay of nine years in seeking and

obtaining the claims of the '737 patent has caused harm to the FedEx Companies.  This delay constitutes laches and renders the claims of the '737 patent unenforceable.

27.    Based on Ablaise's pending DC Complaint, the FedEx Companies have a cloud over their businesses with respect to the '737 patent, and fear that, at some point in the near future, Ablaise will allege that the FedEx Companies are infringing the '737 patent by making, using, and operating www.fedex.com and related websites.

28.    These facts indicate that a substantial controversy between the FedEx Companies and Ablaise, parties having adverse legal interests, exists and that such controversy is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.  Therefore, the FedEx Companies are entitled to a judgment declaring that the '737 patent is unenforceable.

## Prayer for Relief

Wherefore, the FedEx Companies pray that this Court:

A.    Declare that the FedEx Companies have not infringed any valid and enforceable claim of the '737 patent;

B.    Declare the '737 patent is invalid;

C.    Declare the '737 patent is unenforceable;

D.    Declare this case exceptional under 35 U.S.C. § 285 and award the FedEx Companies their costs, disbursements, and attorney fees in connection with this action under 35 U.S.C. § 285, and any other authority deemed appropriate by the Court; and

E.    Award the FedEx Companies any other and further relief as this Court may deem just and proper.

## Demand for Jury Trial

The FedEx Companies demand a trial by jury on all matters properly tried by

jury.

FEDEX CORPORATE SERVICES, INC. and
FEDERAL EXPRESS CORPORATION

Dated: October 23, 2007     By:     /s/  Robert R. Ross
                                     Robert R. Ross (BPR #021340)
                                     R. Jeffrey Kelsey (BPR#15522)
                                     Federal Express Corporation
                                     3620 Hacks Cross Road
                                     Building B--2nd Floor
                                     Memphis, TN 38125
                                     Tel:  (901) 434-8369
                                     Fax:  (901) 434-4523
                                     rrross@fedex.com
                                     Attorneys for FedEx Corporate Services, Inc. and
                                     Federal Express Corporation

**EXHIBIT E**



# Fact Sheet

| | |
|---|---|
| **History** | The modern air/ground express industry was pioneered with the founding of Federal Express in 1971; the corporation was created in 1998 as FDX Corporation and became FedEx Corporation in January 2000. |
| **Headquarters** | Memphis, Tenn. |
| **Principal Officers** | Frederick W. Smith, Chairman, President and CEO<br>Robert B. Carter, Executive Vice President, FedEx Information Services and CIO<br>T. Michael Glenn, Executive Vice President, Market Development and Corporate Communications<br>Alan B. Graf Jr., Executive Vice President and CFO<br>Christine P. Richards, Executive Vice President, General Counsel and Secretary |
| **NYSE Listing** | FDX (since December 1978) |
| **FY07 Revenue** | $35.2 billion |

## Consolidated Information for all FedEx Companies

| | |
|---|---|
| **Average Daily Volume** | More than 6.5 million shipments for express, ground, freight and expedited delivery services |
| **Service Area** | More than 220 countries and territories, including every address in the United States |
| **Workforce** | More than 280,000 employees and contractors worldwide |
| **fedex.com** | Over 15 million unique visitors monthly; more than 3 million package tracking requests daily and 15 million packages shipped via FedEx Ship Manager monthly |
| **Operating Facilities** | *Express:* 1,401 stations; 10 air express hubs<br>*Ground:* 29 ground hubs; over 500 pickup/delivery terminals<br>*Freight:* Approximately 470 service centers<br>*Kinko's:* More than 1,675 locations including FedEx Kinko's Office and Print Centers, FedEx Kinko's Ship Centers, commercial production centers |
| **Air Operations** | 669 aircraft; more than 375 airports served worldwide |
| **Ground Fleet** | More than 75,000 motorized vehicles for express, ground, freight and expedited delivery service |
| **Dropoff Locations** | 719 FedEx World Service Centers<br>1,614 FedEx Kinko's Office and Print Centers<br>7,195 FedEx Authorized ShipCenters®<br>42,193 FedEx Drop Boxes (including 4,973 United States Postal Service locations) |
| **Recent Award** | *FORTUNE magazine:  No. 6 among "America's Most Admired Companies" (2007)*<br>*FORTUNE magazine:  No. 7 among "World's Most Admired Companies" (2007)* |

*The above numbers are consolidated for all FedEx operations worldwide. For company-specific information, see fact sheets for FedEx Express, FedEx Ground, FedEx Freight, FedEx Kinko's Office and Print Services, FedEx Custom Critical, FedEx Trade Networks, FedEx Supply Chain Services, FedEx Customer Information Services and FedEx Services. Additional financial information is available in our quarterly statistics book.*

*Revised June 18, 2007*

**EXHIBIT F**

| DC HOME | ABOUT DC | RESIDENTS | BUSINESS | VISITORS | DC GOVERNMENT |





## Organization Information

DCRA HOME

SERVICES

INFORMATION

ONLINE SERVICE
   REQUESTS

## Online Organization Registration
**Search Registered Organizations**

**Organization Details - Step** 1 2 3
To view another organization from the search, select the **Return to Search Results** button below. You may also **print** the organization details, or start a **new search**. Use the **Back to Main Page button** to continue the registration process.

| Organization | | Registered Agent |
|---|---|---|
| **Organization Name:** | FEDEX CORPORATION | C T Corporation System 1015 15th Street, N.W. Ste. 1000 Washington, DC 20005 |
| **State:** | DE | |
| **Status:** | ACTIVE | |
| **Initial Date of Registration:** | 5/26/1998 | |
| **File No.:** | 981694 | |
| **Organization Type:** | FOREIGN BUSINESS CORPORATION | |

| << Back to Main Page | < Return To Search Results | Print Results |
|---|---|---|
| New Search | | |

For more information, contact the Corporations Division at (202) 442-4432 or Ask the Director .

Government of the District of Columbia
Citywide Call Center : (202) 727-1000
TTY/TDD Directory

Telephone Directory by
Topic | Agencies | DC
Council | Search |
Elected Officials

Feedback | Translation
| Accessibility | Privacy
& Security | Terms &
Conditions

John A. Wilson Building
1350 Pennsylvania Avenue, NW
Washington, DC 20004

?

**EXHIBIT G**



The Memorial ▽   The Team ▽   Programs & Events ▽   Support the Dream ▽   News & Media ▽   Resources ▽

# FedEx Corporation Donates $1 Million to Martin Luther King, Jr. National Memorial



Contacts:
Rica Orszag                          Kristin Krause
Washington, D.C.                     FedEx Corporation
Martin Luther King, Jr. National     202-218-3808
Memorial Foundation Project, Inc.    kristin.krause@fedex.com
202-253-8974
rorszag@mlkmemorial.org

**For Immediate Release**

(WASHINGTON, DC - September 5, 2006) -- FedEx Corporation today announced a $1 million contribution to help build a memorial to Martin Luther King, Jr. on the National Mall.  Gina Adams, Corporate Vice President of Government Affairs for FedEx Corporation, will join Harry E. Johnson, President and CEO of the Washington, DC Martin Luther King, Jr. National Memorial Project Foundation, Inc. and Congressman Harold Ford, Jr. to announce the gift at an event in Washington, DC tonight.

"FedEx Corporation is proud to support the building of a national memorial to Martin Luther King, Jr.," said Adams of FedEx.  "I want to encourage all of my colleagues in the corporate community to join FedEx in support of an historic project to honor the ideals of peace, hope, and democracy for which Dr. King stood."

"Dr. King's Memorial on the National Mall is significant in so many ways.  He will be the first man of color to be memorialized among past presidents and war heroes," said Congressman Harold Ford, Jr. "It is an honor to be part of this important effort that not only celebrates Dr. King's ideals and his unending pursuit of peace and equality, but also makes the National Mall more reflective of today's America."

FedEx Corporation joins a number of other corporate donors including General Motors, Tommy Hilfiger Corporate Foundation, GE, PepsiCo and Exxon Mobil.  To date, the Memorial Foundation has raised $64 million of the $100 million needed to build and maintain the memorial.

"FedEx has shown once again that if you absolutely, positively, need to get something done, you can count on FedEx.  FedEx is an outstanding corporate citizen and this donation is a testament to that. The Foundation thanks FedEx for its generosity and welcomes the company to a growing list of supporters," said Johnson of the Memorial Foundation.

**About Washington, DC Martin Luther King, Jr. National Memorial**

**Project Foundation, Inc.**
A memorial honoring Dr. Martin Luther King, Jr. will be built on the
National Mall in Washington, DC  The Memorial will be situated adjacent
to the F.D.R. Memorial and in a direct line between the Lincoln and
Jefferson Memorials.  Congress passed Joint Resolutions in 1996
authorizing Alpha Phi Alpha Fraternity, Inc. to establish a memorial
honoring Dr. King to be built in Washington, DC.  Groundbreaking is
scheduled for November 13 and the Memorial is scheduled to be
completed in 2008.  For more information, visit www.buildthedream.org.

For more information about the Washington, DC Martin Luther King, Jr.
National Memorial Project, please visit www.buildthedream.org or call
Rica Orszag at 202-253-8974.

**About FedEx**
FedEx Corp. (NYSE: FDX) provides customers and businesses worldwide
with a broad portfolio of transportation, e-commerce and business
services. With annual revenues of $32 billion, the company offers
integrated business applications through operating companies competing
collectively and managed collaboratively, under the respected FedEx
brand. Consistently ranked among the world's most admired and trusted
employers, FedEx inspires its more than 260,000 employees and
contractors to remain "absolutely, positively" focused on safety, the
highest ethical and professional standards and the needs of their
customers and communities. For more information, visit www.fedex.com.

Media Notes: To arrange an interview or to receive additional
information, please contact Rica Orszag at 202-414-0774 or
rorszag@mlkmemorial.org.

### ###

© 2006 Washington, DC Martin Luther King, Jr.
National Memorial Project Foundation, Inc. All Rights Reserved.

401 F Street, NW, Suite 334 | Washington, DC 20001 | 1.888.484.3373

Privacy Notice | License Agreement | 

**EXHIBIT H**



## FedEx in Washington, D.C.

As a long-time business and community leader in the Washington, D.C. area, we are committed to its growth and development.  We also remain steadfast in our support for local non-profit organizations to make a positive change in the community and give back to the city of Washington, D.C. where our team members and customers live and work.

### FedEx in Washington, D.C.

- FedEx – through our FedEx Express, FedEx Ground and FedEx Kinko's operating companies – has numerous operations in and provides service to the Washington, D.C. community to facilitate the movement of goods domestically and globally.

  - ➢ <u>FedEx Express:</u> Operates more than ten local stations and facilities in the greater Washington, D.C. metropolitan area.

  - ➢ <u>FedEx Ground:</u> Operates several local hub and terminal facilities, including a Hagerstown hub that began operations in June 2005.

  - ➢ <u>FedEx Kinko's:</u> Operates more than 65 facilities in the area.

### Key Facts and Figures

- FedEx has a large presence in Washington, D.C., with more than 3,500 team members in the metropolitan area representing FedEx Express, FedEx Ground, FedEx Freight, FedEx Kinko's, FedEx Custom Critical, FedEx Services, FedEx Trade Networks, and FedEx Home Delivery.

- Approximately 50 flights per week pass through Washington Dulles International Airport.
  - ➢ Flights operate to/from FedEx Express hub operations in Memphis, Newark and Indianapolis.

- FedEx serves the area with hundreds of delivery vehicles, including more than 100 FedEx Freight trucks and trailers.

- FedEx products and services are accessible at more than 1,000 retail locations in the Washington, D.C. metropolitan area, including FedEx self-service drop boxes, FedEx Authorized Ship Centers and Stations and FedEx Kinko's Office & Print Centers, for maximum customer convenience.

## FedEx in the Community

- FedEx is a proud supporter of local non-profit organizations, including:

  - National Girl Scouts
  - Martin Luther King Jr. National Memorial Foundation
  - Dress for Success
  - Vietnam Veterans Memorial Fund
  - Flight 93 National Memorial Fund

  - Greater Washington Urban League
  - Blair House Restoration Fund
  - Friends of the National Zoo
  - Red Cross of Washington, D.C.
  - American Cancer Society

- FedEx goes beyond basic corporate philanthropy in the donation of funding and services – FedEx team members dedicate countless hours of volunteer time to make a positive impact on the communities worldwide in which we live and work.

# EXHIBIT I



Possibility speaks.

# Corporate Information

**FedEx Corporation:** 942 South Shady Grove Road, Memphis, Tennessee 38120, (901) 818-7500, fedex.com

**Annual Meeting of Shareowners:** Monday, September 24, 2007, 10:00 a.m. local time, Hilton Hotel, Tennessee Grand Ballroom, 939 Ridge Lake Boulevard, Memphis, Tennessee 38120

**Stock Listing:** FedEx Corporation's common stock is listed on the New York Stock Exchange under the ticker symbol FDX.

**Shareowners:** As of July 9, 2007, there were 20,165 shareowners of record.

**Market Information:** Following are high and low sale prices and cash dividends paid, by quarter, for FedEx Corporation's common stock in 2007 and 2006:

|  | First Quarter | Second Quarter | Third Quarter | Fourth Quarter |
|---|---|---|---|---|
| **FY 2007** | | | | |
| **High** | **$118.74** | **$119.21** | **$121.42** | **$116.76** |
| **Low** | **97.79** | **99.34** | **106.63** | **104.01** |
| **Dividend** | **0.09** | **0.09** | **0.09** | **0.09** |
| | | | | |
| FY 2006 | | | | |
| High | $ 91.43 | $ 98.81 | $108.83 | $120.01 |
| Low | 79.55 | 76.81 | 95.79 | 106.00 |
| Dividend | 0.08 | 0.08 | 0.08 | 0.08 |

**Financial Information:** Copies of FedEx Corporation's Annual Report on Form 10-K, other documents filed with the Securities and Exchange Commission (SEC) and other financial and statistical information are available through our Web site at fedex.com. Company documents filed electronically with the SEC can also be found at the SEC's Web site at www.sec.gov. You will be mailed a copy of the Form 10-K upon request to: FedEx Corporation Investor Relations, 942 South Shady Grove Road, Memphis, Tennessee 38120, (901) 818-7200, e-mail: ir@fedex.com.

**SEC and NYSE Certifications:** The most recent certifications by our principal executive and financial officers pursuant to Section 302 of the Sarbanes-Oxley Act of 2002 are filed as exhibits to our Form 10-K. We have also filed with the New York Stock Exchange the most recent Annual CEO Certification as required by section 303A.12(a) of the NYSE Listed Company Manual.

**Independent Registered Public Accounting Firm:** Ernst & Young LLP, Memphis, Tennessee

**Customer Service:** Call 1-800-Go-FedEx or visit fedex.com.

**Media Inquiries:** Jesse W. Bunn, Staff Director, Marketplace Communications, FedEx Corporation, 942 South Shady Grove Road, Memphis, Tennessee 38120, (901) 818-7463, e-mail: mediarelations@fedex.com

**Shareowner Account Services:** Computershare Investor Services, P.O. Box 43069, Providence, Rhode Island 02940-3069, (800) 446-2617, www.computershare.com

**Direct Stock Purchase and Dividend Reinvestment:** For information on the direct stock purchase and dividend reinvestment plan for FedEx Corporation common stock, call Computershare at (800) 446-2617 or visit their direct stock purchase plan Web site at www.computershare.com. This plan provides an alternative to traditional retail brokerage methods of purchasing, holding and selling FedEx common stock. This plan also permits shareowners to automatically reinvest their dividends to purchase additional shares of FedEx common stock.

**Investor Relations:** Mickey Foster, Vice President, Investor Relations, FedEx Corporation, 942 South Shady Grove Road, Memphis, Tennessee 38120, (901) 818-7200, e-mail: ir@fedex.com

**Equal Employment Opportunity:** Our greatest asset is our people. We are committed to providing a workplace where our employees and contractors feel respected, satisfied and appreciated. Our policies are designed to promote fairness and respect for everyone. We hire, evaluate and promote employees, and engage contractors, based on their skills and performance. With this in mind, we will not tolerate certain behaviors. These include harassment, violence, intimidation and discrimination of any kind involving race, color, religion, national origin, gender, sexual orientation, age, disability, veteran status or, where applicable, marital status.

**Service Marks:** The following are registered service marks of Federal Express Corporation, registered with the U.S. Patent & Trademark Office and in other countries: FedEx®, FedEx Express®, FedEx Ground®, FedEx Freight®, FedEx Freight Advance Notice®, FedEx Custom Critical®, FedEx Supply Chain Services®, FedEx SmartPost®, FedEx Home Delivery®, FedEx Trade Networks® and FedEx Services®. FedEx National LTL℠, Caribbean Transportation Services℠, and FedEx Global Supply Chain Services℠ are service marks of Federal Express Corporation. FedEx Kinko's Office and Print Centers® is a registered service mark of Federal Express Corporation and Kinko's Ventures, Inc. FedEx Kinko's Ship Centers℠ is a service mark of Federal Express Corporation and Kinko's Ventures, Inc.

Strategy + Design by Unboundary, Inc., Atlanta, GA | Printing by Cenveo/Anderson Lithograph | Principal photography by Walter Smith

**EXHIBIT J**



Investor Relations
## Stock Information

Get the latest information on how FedEx stock is fairing.





| ▲ +1.22 | Current | $102.43 |
|---|---|---|
| Nov 02 | 04:00 PM ET | |
| Prior close | | $101.21 |
| Open | | $101.50 |
| High | | $104.00 |
| Low | | $100.48 |
| Volume | | 2,354,000 |

Pop-Up Quote



○ 3 Mo.   ○ 6 Mo.   ○ 1 Yr.

**Email Alerts**
Subscribe to the Financial Reports
service and receive an email
update whenever relevant
information is added to this site!

**Related Information**
Learn more about FedEx, FedEx
investor news, earnings releases,
disclosure policy and social
responsibilities.

**Stock Quotes**
Latest quotes for FedEx stock.

**Price History/Charts**
Research historical FedEx stock prices.

**Dividend/Split History**
Listing of dividend payments and stock splits for FedEx stock.

**Investment Calculator**
Calculate the value of investments made in FedEx shares.

**Key Facts**
FedEx profile and common stock statistics.

**Analyst Coverage**
Contact information for the research analysts that cover FedEx.

**Direct Purchase**
Details on how to purchase FedEx shares.

# EXHIBIT K



Investor Relations

## Investment Calculator

---

**Please choose one of two scenarios:**

○ If I invested $ `1000.00` on `04/12/1978`
- How many shares would I have now?
- What would they be worth?
- What would my total return and percent gain be?

○ If I had `1000` shares on `04/12/1978`
- How many shares would I have now?
- What would they be worth?
- What would the original investment have been?
- What would my total return and percent gain be?

[ Calculate ]

*The calculation period is from the original investment date through today (or the date of the latest available closing share price for FedEx). The results are for illustrative purposes only and do not take into consideration the effects of the reinvestment of dividends, taxes or other factors which may affect the values shown. Please note that historical investment performance is not indicative of future performance.*



**Email Alerts**
Subscribe to the Financial Reports service and receive an email update whenever relevant information is added to this site!

**Related Information**
Learn more about FedEx, FedEx investor news, earnings releases, disclosure policy and social responsibilities.

**EXHIBIT L**



Investor Relations
## Direct Purchase

FedEx is dedicated to serving its shareowners. On this page, you can learn about the Computershare Investment Plan, A Direct Stock Purchase and Dividend Reinvestment Plan for FedEx Corporation Common Stock, as well as other FedEx investment options.

**On this page:**
- **Direct Stock Purchase Plan**
- **Other Investment Options**

### Direct Stock Purchase Plan

FedEx's transfer agent, Computershare, sponsors and administers the Computershare Investment Plan for FedEx Corporation Common Stock. This plan offers direct stock purchase and dividend reinvestment options and is available to current FedEx stockholders as well as new investors. For more information, you may contact Computershare, the plan administator.

| | |
|---|---|
| **By Mail:** | Computershare Investor Services<br>P.O. Box 43069<br>Providence, R.I. 02940-3069 |
| **By Phone:** | 1-800-446-2617 (U.S. or Canada)<br>1-781-575-2723 (outside the U.S. or Canada) |
| **By Internet:** | Computershare |

**Important:** The Web site to which you are being provided a link above is not part of the FedEx Web site. This link is provided for your convenience only. FedEx makes no representation as to the accuracy of any information contained in the linked Web site.

### Other Investment Options

You can invest in the common stock of FedEx through many financial institutions such as full-service brokers, discount brokers and online brokers. Minimums, fees and other terms vary. Consult your local listings or financial advisor for more information.

This communication does not constitute an offer to sell or the solicitation of an offer to buy any security.

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ABLAISE LTD. | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:07-cv-01836 |
| | ) | |
| NAVTEQ CORP. | ) | Judge James Robertson |
| | ) | |
| FEDEX CORP. | ) | |
| | ) | |
| FEDEX CORPORATE SERVICES INC. | ) | |
| | ) | |
| GENERAL MOTORS CORP. | ) | |
| | ) | |
| ALASKA AIR GROUP, INC. | ) | |
| | ) | |
| CIRCUIT CITY STORES, INC. | ) | |
| | ) | |
| Defendants. | | |

## [PROPOSED] ORDER

**IT IS HEREBY ORDERED** that Defendant FedEx Corporation's motion to dismiss, or in the alternative transfer venue to the Western District of Tennessee is **DENIED**.

Dated this ___ of _____, 2007      _____

The Honorable James Robertson

MP3 20248946.1

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 5, 2007, a true and correct copy of the foregoing Opposition to FedEx Corporation's Motion to Dismiss FedEx Corporation Or, In the Alternative, Motion to Sever and Transfer Pursuant to 28 U.S.C. § 1406 was served via first class mail, postage prepaid, to the following:

Kenneth W. Curtis
Finnegan, Henderson, Farabow, Garrett & Dunner, L.L.P.
901 New York Ave.
Washington D.C. 20001


<u>s/Patrick M. Arenz</u>
Patrick M. Arenz